# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT SMITH,                )
                             )
       Plaintiff,       )
                             )
       v.               )  02:07cv1464
                             )
SPECIALTY POOL CONTRACTORS,  )
                             )
       Defendants.      )

## MEMORANDUM OPINION AND ORDER OF COURT

September 24, 2008

      Presently before the Court for disposition is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant, Specialty Pool Contractors ("Specialty Pool") (*Document Nos. 12 and 13,* respectively), Plaintiff's brief in opposition (*Document No. 23*), and the REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION filed by Defendant (*Document No. 25*).

      The issues have been fully briefed and the matter is ripe for disposition. The factual record has also been thoroughly developed via DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS (*Document No. 17*), the APPENDIX TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS (*Document 14)*), the PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF "UNDISPUTED" FACTS (*Document No. 21*), the PLAINTIFF'S STATEMENT OF MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT (*Document No. 22*), the APPENDIX TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S STATEMENT OF MATERIAL FACTS PRECLUDING

SUMMARY JUDGMENT, AND PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF "UNDISPUTED" MATERIAL FACTS (*Document No. 24*), and the RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT (*Document No. 26*).

After a careful consideration of Defendant's motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the motion for summary judgment will be denied.

### PROCEDURAL BACKGROUND

On October 29, 2007, Plaintiff brought this action by the filing of a three-count Complaint in which he alleges that he was subjected to a hostile work environment because of his race, in violation of Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count I), and his perceived religion, in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and because of his religion and/or ancestry in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Const. Stat. Ann. § 955(a) (Counts II and III). Plaintiff also alleges that after he made complaints of the harassment, Specialty Pool retaliated against him.

Specialty Pool has filed the instant motion for summary judgment in which it contends that Plaintiff is unable to establish a *prima facie* case on his § 1981, Title VII and/or PHRA claims.

### BACKGROUND

As the law requires, all disputed facts and inferences are to be resolved most favorable to the Plaintiff.

Specialty Pool is engaged in the business of building residential and commercial in-ground swimming pools. It is a sole proprietorship owned by Louis Kleespies.

Plaintiff, Robert Smith, worked as a laborer for Specialty Pool from March 6, 2006 through the end of July 2006, when he was injured in a work related accident and suffered a herniated disc. Since that time, Plaintiff has under undergone two (2) back surgeries and has been unable to return to work. In the Fall of 2006, Plaintiff was released to perform sedentary work, but Specialty Pool has no work of a sedentary nature to accommodate him.

Robert "Dale" Rumpf ("Rumpf") hired Plaintiff as a laborer for Specialty Pool on or about March 6, 2006. As a laborer, Plaintiff performed manual work related to the installation of in-ground pools, which included shoveling, digging, using axes and picks, shooting cement, and occasionally operating a mini-bulldozer.

Specialty Pool had two work crews that worked on different projects. During his employment, Plaintiff was supervised by one of two crew leaders: Rumpf and Jerold Doubt, ("Doubt"), who at times was supervised by Rumpf as well.

Plaintiff worked on Rumpf's crew at the outset of his employment. A month or so after Plaintiff began working for Specialty Pool, Rumpf told Plaintiff that he believed that Plaintiff was a "Jew," and informed Plaintiff that he did not like "Jews" because Rumpf was German. Plaintiff told Rumpf that he was not Jewish, but a Catholic, and advised that only his grandparents and mother were Jewish. Rumpf replied: "You got 'Jew' blood in you; you are a 'Jew.' " Thereafter, Rumpf started referring to Plaintiff as "Jew;" "Hebrew;" "Abraham," "Jew Boy," and "Kike." Doubt, Plaintiff's other supervisor, also referred to Plaintiff as "Jew," and other employees at Specialty Pool began to call Plaintiff "Abraham" or "Jew Boy."

On more than one occasion Rumpf would refer to the Holocaust and tell Plaintiff: "Hitler did not do a good enough job because you (Smith) are still alive." The summary judgment record reflects that Rumpf would often say "Heil Hitler" and raise his hand in a Nazi salute in front of Plaintiff.

At times, Plaintiff and the other employees of Specialty Pool would give Rumpf their paychecks to cash for them during lunch break. When Plaintiff would get his pay envelope back it had the word "Hebrew" written across the top in Rumpf's handwriting.

According to Plaintiff, Rumpf would call him "Jew" every day - often five (5) to six (6) times a day. Rumpf also referred to Plaintiff as "Hebrew" every day whether Plaintiff was on Rumpf's crew or on Doubt's crew. Rumpf characterized the frequency of his "Jew" comments to Plaintiff as a "common, everyday thing, just like picking up tools." Likewise, Doubt admits that he called Plaintiff "Jew" more than once a week throughout Plaintiff's employment.

Anytime that Rumpf needed Plaintiff, he would call out: "Yo, Jew." When Rumpf was not working directly with Plaintiff, he would refer to Plaintiff as "Jew" on the walkie-talkies when talking with Doubt, the other crew chief.

Plaintiff first attempted to stop Rumpf and the others by ignoring their comments. When this did not work, Plaintiff complained numerous times to his managers. He personally complained to Rumpf at least three (3) times. On one occasion, Plaintiff went to Rumpf's trailer and told him to "knock it off." On other occasion, Plaintiff went into a trailer in which Rumpf was working and told Rumpf, "Dude, you need to stop this," and informed Rumpf that

On more than one occasion Rumpf would refer to the Holocaust and tell Plaintiff: "Hitler did not do a good enough job because you (Smith) are still alive." The summary judgment record reflects that Rumpf would often say "Heil Hitler" and raise his hand in a Nazi salute in front of Plaintiff.

At times, Plaintiff and the other employees of Specialty Pool would give Rumpf their paychecks to cash for them during lunch break. When Plaintiff would get his pay envelope back it had the word "Hebrew" written across the top in Rumpf's handwriting.

According to Plaintiff, Rumpf would call him "Jew" every day - often five (5) to six (6) times a day. Rumpf also referred to Plaintiff as "Hebrew" every day whether Plaintiff was on Rumpf's crew or on Doubt's crew. Rumpf characterized the frequency of his "Jew" comments to Plaintiff as a "common, everyday thing, just like picking up tools." Likewise, Doubt admits that he called Plaintiff "Jew" more than once a week throughout Plaintiff's employment.

Anytime that Rumpf needed Plaintiff, he would call out: "Yo, Jew." When Rumpf was not working directly with Plaintiff, he would refer to Plaintiff as "Jew" on the walkie-talkies when talking with Doubt, the other crew chief.

Plaintiff first attempted to stop Rumpf and the others by ignoring their comments. When this did not work, Plaintiff complained numerous times to his managers. He personally complained to Rumpf at least three (3) times. On one occasion, Plaintiff went to Rumpf's trailer and told him to "knock it off." On other occasion, Plaintiff went into a trailer in which Rumpf was working and told Rumpf, "Dude, you need to stop this," and informed Rumpf that

he had blown Rumpf off the first couple of times, but that when it gets down to other crew people starting to call him names, it has to stop. Rumpf replied, "Smitty, not a problem."

According to Plaintiff, Rumpf's comments stopped for a day or two, but then resumed, prompting Plaintiff to request a transfer to Doubt's crew. Plaintiff worked on Doubt's crew from the time he transferred on April 10, 2006, until his last day of work on July 31, 2006. Plaintiff testified that although he was no longer on Rumpf's crew, Rumpf continued to call him "Hebrew" and other anti-Semitic names.

Soon after Plaintiff transferred to Doubt's crew, he asked to speak to Doubt after work. Doubt drove Plaintiff to his house after work, where Plaintiff told Doubt that he was sick and tired of the name calling and that he had previously asked Rumpf to stop. Plaintiff asked Doubt what he should do about the situation and Doubt replied that he did not know what to tell Plaintiff to do.

Plaintiff alleges that Rumpf not only ignored his complaints but also retaliated against him for making the complaints. For example, according to Plaintiff, Rumpf assigned Plaintiff to tasks that other workers did not want to do, such as shoveling mud after a dug pool collapsed, and assigned Plaintiff to other menial tasks. When work was slow, Rumpf told Doubt to "let the Jew stay home." Plaintiff asked Rumpf why being Jewish meant he had to stay home and Rumpf replied that "Jews are tight with their money. They are all rich." In April 2006, Plaintiff lost a day of work because of Rumpf's instruction to "let the Jew stay home."

Plaintiff further alleges that after this case began, Rumpf's wife, who worked for Specialty Pool part time, told him that she hoped "he burned in hell and he was a rotten no-good Jew."

Specialty Pool has no policy which precludes religious or racial harassment. The sole anti-discrimination policy of Specialty Pool is a statement in its handbook which notes that it complies with Executive Order 11246, 30 F.R. 12319-25, and does not discriminate against applicants or employees because of race, color, religion, sex, or national origin. Nothing in Specialty Pool's policy manual requires a manager to report complaints of discrimination as part of his job responsibilities. Nothing in Specialty Pool's policy precludes retaliation for reporting either racial or religious harassment.

### STANDARD OF REVIEW

In deciding a Motion for Summary Judgment, the Court considers whether the non-moving party has - through pleadings, depositions, answers to interrogartories, admissions on file, and affidavits, if any - established any genuine issue of material fact sufficient for a reasonable jury to find in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest upon factually unsupported allegations contained in its pleadings; however, all inferences must be drawn and all doubts resolved in his favor. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1020 (3d Cir. 1990). If the non-moving party fails to present evidence sufficient to establish an "element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is appropriate. *Celotex,* 477 U.S. at 322.

## DISCUSSION

I. <u>§ 1981 - Claim of Racial Discrimination</u>

42 U.S.C. § 1981 precludes discrimination because of race in the making and enforcement of contracts, which includes the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b). Section 1981 now encompasses hostile work environment claims, and courts apply the same standards as in a similar claim under Title VII. *See CBOCS West, Inc. v. Humphries*, ___ U.S. ___, 128 S. Ct. 1951 (2008) (Section 1981 claims intentionally overlap Title VII analysis). Persons of Jewish ancestry are a distinct race and, therefore, within the protection of 42 U.S.C. § 1981. *St. Francis College v. Al-Khazraji,* 481 U.S. 604, 611-13 (1987).

Accordingly, to establish a *prima facie* case of racial harassment under § 1981, Plaintiff need only point to facts from which a jury could find that (i) he suffered intentional discrimination because of his race; (ii) the discrimination was severe or pervasive; (iii) the discrimination was subjectively offensive to him; (iv) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (v) the existence of respondeat superior liability. *Jenson v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006).

Specialty Pool argues that Plaintiff cannot meet his *prima facie* case because he is unable to establish that (i) he was subjected to racial harassment which was sufficiently severe or pervasive and (ii) that he was subjectively offended by the alleged harassment.

Case law is clear that in order to establish a *prima facie* case, a plaintiff must have subjectively perceived the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Harris v. Forklift Systems*, 510 U.S.17, 21 (1993).

"[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs.*, Inc., 523 U.S. 75, 81-82 (1998) (internal citations omitted). Occasional comments, discourtesy, rudeness, or isolated incidents, unless extremely serious, are insufficient to establish severe or pervasive harassment. Rather, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

While the parties dispute the "frequency" of the harassment, the Court finds that a rational trier of fact viewing the record in the light most favorable to Plaintiff could certainly find that the harassment was pervasive during the time Plaintiff worked on Rumpf's crew, that the harassment continued after Plaintiff complained directly to Rumpf, and that the harassment continued even after Plaintiff transferred to Doubt's crew. Based on this, it could be reasonably inferred that Plaintiff was invariably barraged with unwelcome comments nearly every day he worked.

The second reason that the Court rejects Specialty Pool's argument concerning the arguably "occasional" nature of the harassment is because the objectionable conduct must be either "severe or pervasive." *Meritor Sav. Bank, FSB*, 477 U.S. at 67 (emphasis added). The relevant test is a disjunctive one, requiring that the harassing conduct be sufficiently severe or sufficiently pervasive. When examining all of the circumstances involved, both the frequency of the discriminatory conduct and its severity are factors that must be considered.

Here, the Court finds that a rational trier of fact could find that the comments of Rumpf and Doubt were so offensive so as to offset any arguable infrequency.

Defendant also contends that Plaintiff has not established that he was subjectively offended by the alleged racial harassment. However, the Court finds that Plaintiff has presented more than enough evidence to survive summary judgment on this issue. At this stage of the litigation, all that is required is that Plaintiff present evidence which reflects that he perceived himself to be subject to an abusive environment and that he manifested his perception to his supervisor. The summary judgment record reflects that Plaintiff complained about the alleged harassment to both Rumpf and to Doubt and told his supervisors that the comments about his race were not welcomed. The Court finds and rules that this is sufficient for Plaintiff to establish that he was subjectively offended by the racial harassment he experienced.

In sum, viewing the summary judgment record in the light most favorable to Plaintiff, the Court finds and rules that Plaintiff has produced evidence which demonstrates that he was subjected to race-based intimidation, ridicule, and insult by his supervisors that was sufficiently severe or pervasive and that Plaintiff was subjectively offended by the comments. Therefore, Defendant's motion for summary judgment on this claim is denied.

II.     Title VII and PHRA- Religious Harassment[1]

Count II of Plaintiff's Complaint states that "because of [his] religion, Defendant created a hostile work environment in violation of Title VII." To establish a *prima facie* case of religious harassment, a plaintiff must demonstrate the following: (i) that he suffered intentional discrimination because of religion; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected the plaintiff; (iv) the discrimination would detrimentally affect a reasonable person of the same religion in that position; and (v) the existence of respondeat superior liability. *Harris,* 510 U.S. at 21.

Defendant contends that Plaintiff cannot maintain a claim that he has been subjected to religious harassment because his religious creed is not Judaism. According to Defendant, because Plaintiff is Catholic, "the only religious harassment claim that he could bring is one asserting that he has been harassed because he is Catholic." Further, Defendant argues that "even if the perception approach is applicable here, to support a claim for religious discrimination, Smith must demonstrate that Rumpf perceived that Smith practiced Judaism." Reply at 3.

Neither the United States Supreme Court nor the Court of Appeals for the Third Circuit has ruled that a "perception theory" is applicable in Title VII discrimination cases.

---

[1] Claims under the PHRA are generally analyzed in the same manner as claims under federal discrimination states. The United States Court of Appeals for the Third Circuit has held that "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002). *See also Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996) (holding that courts should interpret the PHRA in accord with Title VII).

However, in *Fogelman v. Mercy Hospital, Inc.*, our appellate court addressed the "perception theory" of retaliation under the ADA and ADEA anti-retaliation provisions, whose terms are nearly identical to those of the Title VII anti-retaliation provision, and held that the plain language of Title VII directly supports a perception theory of discrimination. The circuit court stated that:

> [I]magine a Title VII discrimination case in which an employer refuses to hire a prospective employee because he thinks that the applicant is a Muslim. The employer is still discriminating on the basis of religion even if the applicant he refuses to hire is not in fact a Muslim. What is relevant is that the applicant, whether Muslim or not, was treated worse than he otherwise would have been for reasons prohibited by the statute.

Id. at 571.

The record is undisputed that Rumpf was informed by Plaintiff that he was Catholic and that Rumpf replied that "if Plaintiff has Jew blood in him, he is a Jew." Defendant argues that from this statement it is clear that Rumpf considered Plaintiff to be a member of the Jewish race, but that there is no evidence to suggest that Rumpf perceived Smith to practice the religion of Judaism, such to support his claim for religious discrimination.

After a review of the record, it is not clear if Rumpf perceived Plaintiff to practice the religion of Judaism, as well as being a member of the Jewish race. Depending on Rumpf's trial testimony, a reasonable jury could find that Rumpf believed that Plaintiff practiced the religion of Judaism, even though Plaintiff told him otherwise. Accordingly, the Defendant's motion for summary judgment on Plaintiff's religious discrimination claim will be denied at this time.

III.     § 1981 - Retaliation

Section 1981 encompasses retaliation claims based on complaints of racial discrimination. *CBOCS West*, 128 S. Ct. at 1954. In *Burlington Northern & Santa Fe Railway Co.,* the United States Supreme Court held that a retaliation plaintiff need only show that the employer reacted to his complaints by taking action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington,* 548 U.S. 53, 68 (2006).

Specialty Pool argues that it is entitled to summary judgment on this claim because Plaintiff cannot show that he was retaliated against for opposing racial discrimination. Specifically, Specialty Pool argues that Plaintiff cannot show that it took any action against him because he complained of discrimination.

Plaintiff has presented evidence, which if believed by the jury, demonstrates that after Plaintiff told Rumpf that he did not want to be called a Jew any more, Rumpf told Doubt to "let the 'Jew' stay home," and, in fact, Plaintiff did lose a day of pay while working on a project because Rumpf told Doubt to "let the Jew stay home." Plaintiff also alleges that he was assigned to menial tasks and other jobs that his co-workers did not want to do. The Court finds that all of this is evidence from which a reasonable jury could find that Defendant engaged in retaliatory conduct against Plaintiff after he complained of discrimination.[2]

---

[2]  Defendant concedes that the assignment to shovel out mud occurred after Plaintiff's alleged complaints of discrimination; but denies that any other incidents of alleged adverse actions occurred after Plaintiff's alleged complaints. Frankly, the record is not clear when these other incidents of alleged adverse actions took place; however, the record is clear that Rumpf began to call Plaintiff derogatory names within a month or so of Plaintiff commencing his employment in March 2006, that Plaintiff
(continued...)

## CONCLUSION

Viewing the facts in the light most favorable to Plaintiff, the Court finds that genuine issues of material key facts are in dispute with regard to Plaintiff's claims of race discrimination and religious harassment and retaliation. Accordingly, the motion for summary judgment will be denied.

An appropriate Order follows.

McVerry, J.

---

[2](...continued)
complained to Rumpf at least three times, and that Plaintiff was transferred to Doubt's crew no later than April 10, 2006. As in all cases, in order for Plaintiff to prevail on his retaliation claim, he must establish that these events occurred <u>after</u> he made his complaints of discrimination.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:07cv1464 |
| | ) | |
| SPECIALTY POOL CONTRACTORS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, this 24th day of September, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that the Motion for Summary Judgment filed by Defendant Specialty Pool Contractors is **DENIED.**

It is further **ORDERED** that Plaintiff shall file his Pretrial Statement on or before **October 14, 2008**, and Defendant shall file its Pretrial Statement on or before **November 7, 2008.**

A pretrial conference is scheduled on **Thursday, November 20, 2008 at 9:00 a.m.** in Courtroom 6C. The conference shall be attended by an authorized representative of each party, together with trial counsel for each party.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Samuel J. Cordes, Esquire
Ogg, Cordes, Murphy & Ignelzi
Email: scordes@ocmilaw.com

Kurt A. Miller, Esquire
Thorp, Reed & Armstrong
Email: kmiller@thorpreed.com

Amy L. Berecek, Esquire
Thorp Reed & Armstrong
Email: aberecek@thorpreed.com

Megan L. Palumbo, Esquire
Thorp, Reed & Armstrong
Email: mhummel@thorpreed.com