IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT SMITH, | Civil Action |
| Plaintiff, | No. 07-1464 |
| v. | Judge McVerry |
| SPECIALTY POOL CONTRACTORS, | |
| Defendant. | JURY TRIAL DEMANDED |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

P2.     Smith alleges his supervisors created a hostile work environment in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act. A hostile environment involves forms of race or religion-related misconduct that can include demeaning comments in the workplace about a person's religion.

**Authority:** *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 855 (1st Cir. 1998).]

Approved _____   Denied_____   Approved as modified _____

**Defendant's objections**: Objection.  First, it has not been established as a matter of law that Mr. Rumpf was a supervisor of Smith.  Smith alleges that he was harassed by Rumpf, whom he must also prove is his supervisor.  Specialty Pool does not dispute the legal standard for what may constitute supervisory status (i.e., the power to supervise, hire and fire, and to set work schedules and pay rates).  Smith, however, must still prove this fact at trial.  Specialty Pool *has not* stipulated to the fact that Mr. Rumpf was, in fact, a person with such authority.

Further, the plural of the term "supervisors" is inappropriate.  Smith has alleged that only Mr. Rumpf, and not Mr. Doubt or anyone else, engaged in harassing behavior.  Plaintiff's Complaint only refers to allegedly harassing behavior by Mr. Rumpf, not Mr. Doubt. Complaint, ¶¶ 6-9.  Further, in Plaintiff's response to Specialty Pool's Interrogatory No. 12, Plaintiff admitted that "Plaintiff is not alleging that Jerold Doubt made any derogatory comments."

Specialty Pool therefore objects to the term "supervisors" in the instruction as it presumes the establishment of this disputed fact.   Because the fact is still in dispute, the language regarding supervisory status from Specialty Pool's proposed instruction No. 15 should be included.

Second, Specialty Pool agrees to the language stating that "religion-related misconduct" can include demeaning comments, provided that additional language is included, as stated in Specialty Pool's Proposed Jury Instruction No. 16, regarding language and activity that does not, as a matter of law, constitute harassing behavior (e.g., "occasional use of abusive language, tasteless jokes, and occasional teasing," etc.).

**Plaintiff's Response to Defendant's Objections:** Both Rumpf and Doubt are supervisors as a matter of law. Smith has filed a Trial Brief Defendant's Affirmative Defense [Doc. 51] explaining the standard for a finding that an individual is a supervisor.

In addition, Defendant cites no authority holding that a plaintiff must identify any and all harassers in his Complaint. The facts developed in discovery revealed that Doubt made racial and religious-based comments to Smith. Doubt himself admitted that he called Smith a "Jew" at least once a week. (JD 33/ln. 18-25, 34/ln. 1; 37/ln. 6-10). Moreover, this Court noted in its Summary Judgment Opinion that "Doubt, Plaintiff's other supervisor, also referred to Plaintiff as 'Jew.'" [Doc. 27 at 3]

P3. An employer can be motivated by its perception of an employee's race or religion, even if that perception is not factually correct. Thus, even if Mr. Smith does not actually practice the Jewish religion, Defendant may still have engaged in religion-based harassment if it perceived Smith to be Jewish.

**Authority:** *Fogleman v. Mercy Hosp, Inc.*, 283 F.3d 561, 571 (3d Cir. 2002), *cert denied*, 537 U.S. 824 (2002); EEOC Compliance Manual, 13-VI (2006) available at http://www.eeoc.gov/policy/docs/race-color.html.

Approved _____   Denied_____   Approved as modified _____

**Defendant's objections**: Objection. Smith alleged in his Complaint only that he was a member of the Jewish race and that his religious creed is Judaism. Complaint, ¶ 3. In Count I of the Complaint, Smith alleges only that Specialty Pool "created a hostile work environment for Smith because of his race . . . ." Complaint, ¶ 17. Smith has not alleged that, although his religious creed is something other than Judaism, Specialty Pool discriminated against him because it perceived that his religious creed was Judaism. For these reasons, P3 should not be put before the jury.

**Plaintiff's Response to Defendant's Objections:** If an employer mistakenly believes an employee is a certain religion and acts accordingly, even if that employee does not practice that religion, it has violated Title VII's anti-discrimination provision just as surely as if the employee was a certain race and/or religion. *Fogleman*, 283 F.3d at 571; *Fogarty v. Boles*, 121 F.3d 886, 891 (3d Cir.

2

1997)(discharge of employees under the mistaken impression that they had participated in protected statutory activity is enough to violate [the statutory retaliation] Acts).[1]

Defendant now argues Smith did not allege a perception theory in his complaint. However, if Defendant's supervisors believed Smith's religion and/or race was Jewish, and acted on that belief it has violated Title VII. *See* NLRB v. Link-Belt Co., 311 U.S. 584, 588, 61 S.Ct. 358, 361 (1941); Brock v. Richardson, 812 F.2d 121, 123-25 (3d Cir. 1987).

There is nothing inconsistent with pleading that Smith was discriminated against because of his race and/or religion and a finding that Defendant's actions were taken because of those protected categories.

It is Defendant's motivation that is actionable under 42 U.S.C. §2000e-2(a)(1), irrespective of Smith's actual race and/or religion. Therefore, Defendant is simply wrong when it attempts to preclude a perception argument because

P4. A victim of racial or religious harassment has no obligation to quit his job to avoid the

harassment. The law generally expects employees to remain employed even when harassed.

**Authority:** *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004); *Davis v. United States Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998); *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997)(same); *Kurschinske v. Meadville Forging Co.*, 06-87, 2007 WL 1811196 at *4 (W.D. Pa. June 21, 2007); *Miklos v. Principi*, 01-CV-2205, 2006 WL 1438159 at *14 (W.D. Pa. March 16, 2006).

Approved _____   Denied_____   Approved as modified _____

**Defendant's objections:** Specialty Pool will agree to this instruction only if Plaintiff's Motion in Limine to Preclude Evidence and Argument About Smith's Reasons for Continuing to Work for Defendant While He Experienced a Hostile Work Environment is denied. If it is granted, Specialty Pool objects to this instruction. It is true that an employee need not quit while they are experiencing allegedly hostile or abusive conduct at work. However, Specialty Pool should be permitted to introduce evidence showing that Smith did, in fact, remain at Specialty Pool and that he

---

[1]Indeed, the complaint in Fogleman itself does not plead a "perception theory." Rather, it pleads that Mercy fired Fogleman "[I]n retaliation for Plaintiff's father's claim of discrimination against Mercy in violation of the [the relevant retaliatory provision] (Fogleman Complaint ¶¶54, 56, 58); *see also* (Fogleman Complaint ¶33)(On September 17, 1996, in retaliation for Sterril Fogleman's filing a claim against Mercy...Plaintiff was terminated from employment from Mercy..."). The Fogleman complaint was filed with the U.S. District Court for the Middle District of Pennsylvania, at 4:CV-98-1746. This Court may take judicial notice of pleadings filed in this or another court. *See Commonwealth of Pennsylvania v. Brown,* 373 F.2d 771, 778 (3d Cir. 1967); *City of Pittsburgh v. West Penn Power Comp.,* 147 F.3d 256, 259 (3d Cir. 1998). For the Court's convenience, the Fogleman complaint is attached to Appellant's Supplemental Appendix (ASA 4-13).

did not seek other employment opportunities to mitigate damages due to his alleged mental anguish. This evidence bears directly to the severity of the alleged "hostile" or abusive" environment at Specialty Pool.

**Plaintiff's Response to Defendant's Objections:** As explained in Smith's Motion in Limine [Doc. 42], evidence of why Smith did not quit his job is *not* relevant, and any arguable relevance is substantially outweighed by the danger of unfair prejudice, as the duty to mitigate damages does not require an employee to quit his job. The jury should be instructed on this principle of law regardless of this Court's disposition of Smith's Motion in Limine.

> P5. Specialty Pool is liable for the actions of Mr. Rumpf and/or Mr. Doubt in Mr. Smith's claim of harassment if Mr. Smith proves the following elements by a preponderance of the evidence:
>
> First: Mr. Smith was subjected to harassment by Mr. Rumpf and/or Mr. Doubt
>
> Second: Mr. Rumpf and/or Mr. Doubt's conduct was not welcomed by Mr. Smith. Conduct is unwelcome if Mr. Smith did not solicit or invite the conduct and regarded the conduct as undesirable or offensive.
>
> Third: Mr. Rumpf and/or Mr. Doubt's conduct was motivated by Mr. Smith's Jewish ancestry or his religion.
>
> Fourth: The conduct was so severe or pervasive that a reasonable person in Mr. Smith's position would find Mr. Smith's work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of a reasonable person of Jewish ancestry and/or religion and determine that person's reaction to Mr. Smith's work environment.
>
> Fifth: Mr. Smith believed his work environment to be hostile or abusive as a result of Mr. Rumpf and/or Mr. Doubt's conduct.
>
> If you find that the elements have been proved, then you must find for Mr. Smith unless Specialty Pool proves its affirmative defense. I will now instruct on the elements of that defense.

**Authority:** Third Circuit Jury Instructions 5.15; *Moylan v. Maries Country*, 792 F.2d 746, 749 (8th Cir. 1986)

Approved _____   Denied_____   Approved as modified _____

**Defendant's objection:**  Objection. First, as noted above, Smith has not alleged that Mr. Doubt engaged in allegedly harassing conduct.  Therefore, he should not be included in the instruction.

Second, the instruction omits the element requiring Smith to prove that he was, in fact, a member of the Jewish race and/or religion.  That is a necessary element to the claim.  *See* Specialty Pool Proposed Instruction No. 15.  Specialty Pool suggests adding an additional element requiring that Smith establish that he "is a member of the Jewish race and/or religion" (should the Court decide to consolidate the race and religious discrimination instructions, which Specialty Pool opposes).

Third, Specialty Pool agrees to the Fourth element proposed provided that the instruction is modified as follows: "This element requires you to look at the evidence from the point of view of a reasonable person of Jewish ancestry, who practices Catholicism, and determine that person's reaction to Mr. Smith's work environment."  The appropriate standard for determining whether conduct is adequately severe and pervasive is the reasonable person in the circumstances standard. *Hurley v. Atlantic Police Dept.*, 174 F.3d 95, 115-117 (3d Cir. 1999).  The fact that Smith is Catholic is an appropriate circumstance to be considered by the jury in determining whether it was reasonable for him to find the allegedly harassing behavior to be hostile or abusive.

Specialty Pool agrees to the remainder of P5.


P7. In determining whether Specialty Pool exercised reasonable care to prevent racial or religious harassment you should consider the following:

1. Whether Specialty Pool has disseminated a meaningful and effective racial/religious harassment policy;

2. Whether Speciality Pool's management made meaningful and effective efforts to monitor the conduct of its supervisors;

3. Whether the anti-harassment policy includes a credible assurance that the harassing supervisors can be bypassed in registering complaints; and

4. Whether employees have been trained regarding their rights and responsibilities under the anti-harassment policy.

**Authority:** *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742  (1998); McNamara & Sutherland, Federal Employment Jury Instructions, §1:980.

Approved _____   Denied_____   Approved as modified _____

**Defendant's Objection:** The nonexistence of a grievance procedure does not establish, as a matter of law, that the employer has not exercised reasonable care to prevent and/or correct harassment. Faragher v. City of Boca Raton, 524 U.S. 775, 808-09 (1998). Specialty Pool therefore suggests the following instruction regarding the relevance of the presence of a grievance procedure:

> "An employer's lack of having a formal discrimination grievance procedure does not establish, as a matter of law, that the employer has not exercised reasonable care to prevent and/or correct workplace harassment. To comply with the law, it can be sufficient for some employers, because of their small size, to implement informal means by which to prevent and/or correct discriminatory conduct at their workplaces. You should consider any informal means by which Specialty Pool attempted to prevent and/or correct any racially discriminatory conduct at its workplace in determining whether it has exercised reasonable care."

**Plaintiff's Response to Defendant's Objection:** Defendant relies solely on dicta from *Faragher* stating, "[u]nlike the employer of a small work force, who might expect that sufficient care to prevent tortious behavior could be exercised informally, those responsible for city operations could not reasonably have thought that precautions against hostile environments in any one of many departments in far-flung locations could be effective without communicating some formal policy against harassment, with a sensible complaint procedure." *Id.* at 808-09.

*Faragher* did not hold that a small employer can meet its affirmative defense without a policy. Rather, it held that a large employer, even *with* a policy, could not, *as a matter of law,* meet its defense when it did nothing to disseminate that policy. *Id.* at 808.

As further explained in Smith's Trial Brief on Smith's Affirmative Defense [Doc. 51], no court has *ever* held that the employer met its affirmative defense without a policy. Only three district courts have even *cited* the above language in *Faragher*, and found it inapplicable to the facts of the case. *See Starnes v. JLQ Automotive Servs. Co.*, 442 F. Supp. 2d 416, 424 (E.D. Mich. 2006); *Ratts v. Bd. of County Commissioners*, 141 F. Supp. 2d 1289 (D. Kan. 2001); *Elmasry v. Veith*, 2000 WL 1466104 at *6 (D. N.H. January 7, 2000). Therefore, there is absolutely no authority for the proposition that an employer could meet its affirmative defense without a policy.

Lastly, this instruction is factually inapplicable in this case. The evidence on the summary judgment record showed, and the evidence to be presented at trial will show, that Defendant used no means *at all,* whether formal or informal, to prevent or correct discrimination. Therefore, even it could be possible under some factual scenario for an employer to effectively prevent and correct harassment without a policy, this is not that case, and the jury should not be instructed otherwise.

P8.    In determining whether the employer took action reasonably designed to correct the harassment, you should consider the following:

1. Whether Specialty Pool has a racial/religious harassment policy;

2. Whether it enforces that policy;

3. Whether employees are trained and informed about that policy;

4. Whether the employer promptly investigates claims of racial/religious harassment;

5. Whether employees who engage in racial/religious harassment are disciplined.

**Authority:** *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc.*, v. Ellerth, 524 U.S. 742 (1998); McNamara & Sutherland, Federal Employment Jury Instructions, §1:990.

Approved _____   Denied_____   Approved as modified _____

**Defendant's Objection:** The nonexistence of a grievance procedure does not establish, as a matter of law, that the employer has not exercised reasonable care to prevent and/or correct harassment.  Faragher v. City of Boca Raton, 524 U.S. 775, 808-09 (1998).  Specialty Pool therefore suggests the following instruction regarding the relevance of the presence of a grievance procedure:

> "An employer's lack of having a formal discrimination grievance procedure does not establish, as a matter of law, that the employer has not exercised reasonable care to prevent and/or correct workplace harassment.  To comply with the law, it can be sufficient for some employers, because of their small size, to implement informal means by which to prevent and/or correct discriminatory conduct at their workplaces.  You should consider any informal means by which Specialty Pool attempted to prevent and/or correct any racially discriminatory conduct at its workplace in determining whether it has exercised reasonable care."

**Plaintiff's Response to Defendant's Objection:** Defendant relies solely on dicta from *Faragher* stating, "[u]nlike the employer of a small work force, who might expect that sufficient care to prevent tortious behavior could be exercised informally, those responsible for city operations could not reasonably have thought that precautions against hostile environments in any one of

7

many departments in far-flung locations could be effective without communicating some formal policy against harassment, with a sensible complaint procedure." *Id.* at 808-09.

*Faragher* did not hold that a small employer can meet its affirmative defense without a policy. Rather, it held that a large employer, even *with* a policy, could not, *as a matter of law,* meet its defense when it did nothing to disseminate that policy. *Id.* at 808.

As further explained in Smith's Trial Brief on Smith's Affirmative Defense [Doc. 51], no court has *ever* held that the employer met its affirmative defense without a policy. Only three district courts have even *cited* the above language in *Faragher*, and found it inapplicable to the facts of the case. *See Starnes v. JLQ Automotive Servs. Co.*, 442 F. Supp. 2d 416, 424 (E.D. Mich. 2006); *Ratts v. Bd. of County Commissioners*, 141 F. Supp. 2d 1289 (D. Kan. 2001); *Elmasry v. Veith*, 2000 WL 1466104 at *6 (D. N.H. January 7, 2000). Therefore, there is absolutely no authority for the proposition that an employer could meet its affirmative defense without a policy.

Lastly, this instruction is factually inapplicable in this case. The evidence on the summary judgment record showed, and the evidence to be presented at trial will show, that Defendant used no means *at all,* whether formal or informal, to prevent or correct discrimination. Therefore, even it could be possible under some factual scenario for an employer to effectively prevent and correct harassment without a policy, this is not that case, and the jury should not be instructed otherwise.

P9.     I caution you, however, that an employer is not protected from liability for racial/religious harassment, merely because the employer has a grievance procedure, and the employee elected not to pursue the grievance procedure. You must find both that the employer's procedure was reasonably geared to both prevent and correct promptly any racially harassing behavior, and also that the employee unreasonably failed to use that procedure.

**Authority:** *Faragher v. City of Boca Raton*, 524 U.S. at 807 (1998); *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742 (1998); *Sasaki v. Class*, 92 F.3d 232 (4th Cir. 1996); McNamara & Sutherland, Federal Employment Jury Instructions, §1:1000

Approved _____   Denied_____   Approved as modified _____

**Defendant's Objection:** The nonexistence of a grievance procedure does not establish, as a matter of law, that the employer has not exercised reasonable care to prevent and/or correct

harassment. Faragher v. City of Boca Raton, 524 U.S. 775, 808-09 (1998). Specialty Pool therefore suggests the following instruction regarding the relevance of the presence of a grievance procedure:

> "An employer's lack of having a formal discrimination grievance procedure does not establish, as a matter of law, that the employer has not exercised reasonable care to prevent and/or correct workplace harassment. To comply with the law, it can be sufficient for some employers, because of their small size, to implement informal means by which to prevent and/or correct discriminatory conduct at their workplaces. You should consider any informal means by which Specialty Pool attempted to prevent and/or correct any racially discriminatory conduct at its workplace in determining whether it has exercised reasonable care."

**Plaintiff's Response to Defendant's Objection:** Defendant relies solely on dicta from *Faragher* stating, "[u]nlike the employer of a small work force, who might expect that sufficient care to prevent tortious behavior could be exercised informally, those responsible for city operations could not reasonably have thought that precautions against hostile environments in any one of many departments in far-flung locations could be effective without communicating some formal policy against harassment, with a sensible complaint procedure." *Id.* at 808-09.

*Faragher* did not hold that a small employer can meet its affirmative defense without a policy. Rather, it held that a large employer, even *with* a policy, could not, *as a matter of law,* meet its defense when it did nothing to disseminate that policy. *Id.* at 808.

As further explained in Smith's Trial Brief on Smith's Affirmative Defense [Doc. 51], no court has *ever* held that the employer met its affirmative defense without a policy. Only three district courts have even *cited* the above language in *Faragher*, and found it inapplicable to the facts of the case. *See Starnes v. JLQ Automotive Servs. Co.*, 442 F. Supp. 2d 416, 424 (E.D. Mich. 2006); *Ratts v. Bd. of County Commissioners*, 141 F. Supp. 2d 1289 (D. Kan. 2001); *Elmasry v. Veith*, 2000 WL 1466104 at *6 (D. N.H. January 7, 2000). Therefore, there is absolutely no authority for the proposition that an employer could meet its affirmative defense without a policy.

Lastly, this instruction is factually inapplicable in this case. The evidence on the summary judgment record showed, and the evidence to be presented at trial will show, that Defendant used no means *at all,* whether formal or informal, to prevent or correct discrimination. Therefore, even it could be possible under some factual scenario for an employer to effectively prevent and correct harassment without a policy, this is not that case, and the jury should not be instructed otherwise.

P10.    I instruct you as a matter of law that Specialty Pool has not met its burden of showing that it exercised reasonable care to prevent harassment in the workplace on the basis of Jewish ancestry and/or religion, and likewise did not exercise reasonable care to promptly correct any harassing behavior that did occur. Therefore you are directed to find that Specialty Pool did not meet its affirmative defense.

Approved _____    Denied_____    Approved as modified _____

**Defendant's objection:** Objection.  This has not been proven. The alleged lack of a grievance procedure does not establish as a matter of law that the employer has not exercised reasonable care to prevent and/or correct harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 808-09 (1998) (the court noting that employers with small workforces reasonably could be expected to prevent and correct workplace harassment informally without an explicit policy).   Specialty Pool objects to P10 in its entirety.

Specialty Pool proposes the following Instruction, to be added to its Instruction No. 15, as its last paragraph:

"Finally, an employer's lack of having a formal discrimination grievance procedure does not establish, as a matter of law, that the employer has not exercised reasonable care to prevent and/or correct workplace harassment.  To comply with the law, it can be sufficient for some employers, because of their small size, to implement informal means by which to prevent and/or correct discriminatory conduct at their workplaces. You should consider any informal means by which Specialty Pool attempted to prevent and/or correct any racially discriminatory conduct at its workplace in determining whether it has exercised
reasonable care." *Faragher v. City of Boca Raton*, 524 U.S. 775, 808-09 (1998).

**Plaintiff's Response to Defendant's Objection:** Smith has filed a Trial Brief on Defendant's Affirmative Defense [Doc. 51] explaining why Defendant will not be able to prove this defense as a matter of law.  As explained in the Brief, although an employer may implement informal means to prevent and/or correct discriminatory conduct, it has not done so here.

## **Retaliation**

P11.    Mr. Smith also alleges Specialty Pool retaliated against him for opposing racial discrimination by assigning work tasks to him that others did not want to do, by threatening to lay him

off, and/or by causing him to miss one or more days of work.

To establish discriminatory retaliation, Smith must show:

1. He opposed a practice of racial discrimination in the workplace; or Defendant believed he opposed such practices.

2. Defendant took an action against him that might dissuade, or discourage, a reasonable worker from complaining of discrimination; and

3. There was a causal connection between his opposing the racial discrimination practice, and the action taken against him.

**Authority:**  *CBOCS West, Inc v. Humphries*, __ U.S. __, 128 S.Ct. 1951, 1954 (2008); *Burlington Northern & Santa Fe. Railway Co. v. White*, 548 U.S. 53, 68 (2006); *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007); *Abramson v. William Patterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000); *Fogleman v. Mercy Hospital, Inc.*, 283 F.3d 561, 571-572 (3d Cir. 2002); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).

Approved _____   Denied_____   Approved as modified _____

**Defendant's Objection:**  First, regarding the first element, Specialty Pool objects to the language "or Defendant believed he opposed such practice."  Such language is not in the Model Jury Instructions, nor has Plaintiff plead this fact.  Plaintiff's Complaint alleges in Count I only that Specialty Pool "retaliated against Smith for opposing racial discrimination . . . ."  Complaint, ¶ 13.

Second, regarding the second element, Specialty Pool objects to the use of the phrase "an action."  In order to constitute discriminatory retaliation, the employment action must be "materially adverse" to the extent that it might well dissuade or discourage a reasonable worker from complaining of discrimination.  The complete standard for what constitutes an actionable retaliatory employment action was stated in *Burlington N. & S. Ry. v. White*, 548, U.S. 53, 68 (2006) as follows: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" (citations omitted).  The standard incorporates both the "materially adverse" and "might well have dissuaded" elements.  Both should be mentioned in the jury instruction.

Specialty Pool will agree to this element if "action" is changed to "materially adverse employment action."

Third, the employment actions allegedly taken against Mr. Smith remain an issue.  Specialty Pool will agree to the third element of P11 if the word "alleged" is added before "action."

**Plaintiff's Response to Defendant's Objection:** The words "materially adverse" do nothing to enhance the jury's understanding of what constitutes retaliation. The jury need only understand the Supreme Court's standard for retaliation in *Burlington* that the employer's action might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Although "Defendant believed he opposes such practice" is not stated in the Model Jury Instructions, it is clear from *Fogleman* that a perception theory of retaliation exists. *See* 283 F.3d at 571. As explained in response to Defendant's Objection to P3, Smith need not plead perception.

P12.   To succeed on his retaliation claim, Smith need not prove that Specialty Pool fired him, disciplined him, or forced him to quit. Rather, a retaliation plaintiff such as Mr. Smith need only prove his employer reacted to his complaints of discrimination by taking action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

**Authority:** *Burlington Northern & Santa Fe. Railway Co.*, 548 U.S. 53, 68 (2006); *Moore v. City of Philadelphia*, 461 F.3d 331, 345-46 (3d Cir. 2006).

Approved _____   Denied_____   Approved as modified _____

**Defendant's objection:** Specialty Pool will agree to this instruction if the term "a materially adverse" is added before "action," and if "alleged" is added before "complaints." Also, Specialty Pool requests that the phrase "might have" be replaced with either "might well have" or "would," pursuant to *Burlington N. & S.F. Ry. v. White*, 548 U.S. 53, 68 (2006) (stating standard for "materially adverse").

P14.   Even if you do not find that Defendant actually discriminated against Smith because of his race or religion, Smith can still prevail on his claim of retaliation. For purposes of the retaliation claim, Smith need not prove, nor should you consider, the merit of his separate race and religious discrimination claims.

The law protects from retaliation any employee who, in good faith, opposes a practice of religious discrimination in the workplace. The sole question for you to answer for purposes of Smith's

retaliation claim is whether Specialty Pool reacted to Smith's complaints of discrimination by taking an action(s) against him that might dissuade a reasonable worker from complaining of discrimination.

**Authority:** *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006); *Abramson v. William Patterson College of N.J,* 260 F.3d 265, 286 (3d Cir. 2001); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996); *Drinkwater v. Union Carbide Corp.*, 904 F.3d 853, 865 (3d Cir. 1990); *Parker v. Univ. of Pa.*, 239 Fed. Appx. 773, 775-76 (3d Cir. 2007).

Approved _____    Denied_____    Approved as modified _____

**Defendant's objection:** Objection. First, the jury should consider the facts and circumstances of Smith's separate race and religious discrimination claims to determine whether his reporting was reasonable and in good faith. *See* Smith Proposed Jury Instructions, P14 para. 2; P15, para 2(1).

Second, as previously noted, the action taken by the employer must be "materially adverse" to the extent that it would dissuade a reasonable employee from opposing discrimination.

Third, because this instruction presumes the establishment of facts still disputed, "alleged" should be added before "complaints of discrimination" in paragraph two.

Therefore, Specialty Pool will agree to P14 if the language reading "nor should you consider" is removed, and if the term "materially adverse employment action" replaces "action."

**Plaintiff's Response to Defendant's Objection:** The authority cited in support of this instruction makes clear that a plaintiff need not prevail on the underlying discrimination claim in order to prevail on his retaliation claim. Although the jury may consider the same facts it considers in Smith's discrimination claim to determine whether his complaints were reasonable and made in good faith, the proposed instruction explicitly states, "Smith need not prove, nor should you consider, the *merit* of his separate race and religious discrimination claims"(emphasis added). The instruction does not preclude the jury from considering the same facts.

P15.    Smith may meet his burden on his retaliation claim in one of two ways.

First, Smith may show directly that his opposition or filing of a charge of discrimination was a determinative factor in Specialty Pool's decision to take actions against him that would dissuade a reasonable worker from complaining of discrimination.

However, if you do not find that Smith has shown directly that his opposition to race

13

discrimination was a determinative factor in the employer's decisionmaking process, then Smith can meet his burden through indirect evidence that:

    1.    He opposed what he reasonably believed was racial discrimination in the workplace;

    2.    He was qualified for the position he held. That is, he possessed the basic skills to do the job.

    3.    Despite his qualifications, Specialty Pool took actions against him that would dissuade a reasonable worker from complaining of discrimination.

    4.    Specialty Pool treated employees who did not oppose a practice of workplace discrimination more favorably than it treated Smith.

Once these facts have been established, it is Smith's burden to persuade you, by a preponderance of the evidence, that Defendant took actions against him that might well have dissuaded an employee from complaining of discrimination, because of his opposition of race discrimination.

You may infer that Smith has met this burden if you find that the four facts set forth above have been proven by a preponderance of the evidence, and if you further disbelieve Defendant's explanation for why it took actions against Smith, such as assigning work tasks to him that others did not want to do, threatening to lay him off, and/or causing him to miss one or more days of work. That is, you may find for Smith if you find that Specialty Pool's articulated reason for taking these actions against him are a pretext, or a coverup, for illegal retaliation.

**Authority**: *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 281 (3d Cir. 2001); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996)(*en banc*); *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 n.4 (3d Cir. 2006); *Duffy v. Paper Magic Gp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 354 (3d Cir. 1999); *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 280 (3d Cir. 1998).

Approved _____   Denied_____   Approved as modified _____

**Defendant's objection**: Objection. First, "materially adverse action" should replace "actions" in the first sentence, and "alleged" should be inserted before "decision" in paragraph one and before "opposition" in paragraph two.

Second, for the reasons stated above, "allegedly" should be inserted before "took" in the last paragraph. And, the last sentence should read "That is, you may find for Smith if you find that Specialty Pool took these actions and that its articulated reason for taking these actions against him are a pretext, or a coverup, for illegal retaliation."

Finally, Specialty Pool objects to the possibility that "threatening to lay him off" is sufficient to constitute an adverse employment action. Accordingly, Specialty Pool requests that this item be removed from the instruction.

**Plaintiff's Response to Defendant's Objection:** Defendant cites no authority, and Plaintiff's counsel is unaware of any, holding that threatening to lay an employee off is not an adverse retaliatory action as a matter of law. Accordingly, the jury should be able to determine, as a factual matter, whether threatening to lay Smith off would dissuade a reasonable employee from complaining of discrimination. *See Burlington,* 548 U.S. at 68.

## **Punitive Damages**

P21.     It is not necessary for Mr. Smith to present direct evidence of malicious intent, or reckless indifference, on the part of Defendant in order to justify an award of punitive damages against it. Such intent may be inferred by you from the nature of the acts committed by the Defendant and from the facts and circumstances surrounding such acts.

**Authority:**  *Perry v. Larson*, 794 F.2d 279 (7th Cir. 1986); *Kolstad v. American Dental Association,* 119 S.Ct. 2118, 2128 (1999); *United States v. H.M. Branson Distributing Co.,* 398 F.2d 929 (6th Cir. 1968); *Zilig v. Prentice-Hall, Inc.,* 515 F.Supp 716 (S.D.N.Y. 1981).

Approved _____     Denied_____     Approved as modified _____

**Defendant's objection:** In response to Smith's Proposed Instructions **P21 – P25** regarding punitive damages, Specialty Pool proposes that the Court use exclusively the stipulated-to joint Punitive Damages Instruction, taken from the Third Circuit Model Jury Instructions (Civil) § 5.4.2 (2008). To the extent that P21 deviates from the model instructions, Specialty Pool objects. The differences between direct and circumstantial proof will be made by the court in its general instructions. There is no need to reiterate the standard here.

15

P22. If you decide Mr. Smith is entitled to an award of punitive damages, the amount of such damages must be fixed by you. In doing so, you may consider any or all of the following factors:

    a. The character of Defendant's act.

    b. The nature and extent of harm to Mr. Smith that the Defendant caused or intended to cause. (In this regard, you may include the Ms. Smith's trouble and expense in seeking to protect her interests in legal proceedings and in her suit), and

    c. The wealth of Defendant insofar as it is relevant in fixing an amount that will punish it and deter it and others from like conduct in the future.

Authority:  *Alexander v. Riga,* 208 F.3d 419, 430-432 (3d Cir. 2000); *Herman v. Hess Oil Virgin Islands Corp.*, 524 F.2d 767, 772 (3d Cir. 1975); *Hennessy v. Penril DataComm Networks,* 69 F.3d 1344 (7th Cir. 1995); *Edwards v. Jewish Hospital,* 855 F.2d 1345, 1352 (8th Cir. 1988); *Hicks v. Brown Group Inc.,* 902 F.2d 630, 653 (8th Cir. 1990); *Goodwin v. Circuit Court,* 729 F.2d 541, 542-43 (8th Cir. 1984).

Approved _____   Denied_____   Approved as modified _____

**Defendant's objection:**  In response to Smith's Proposed Instructions **P21– P25** regarding punitive damages, Specialty Pool proposes that the Court use exclusively the stipulated-to joint Punitive Damages Instruction, taken from the Third Circuit Model Jury Instructions (Civil) § 5.4.2 (2008). To the extent that P22 deviates from the model instructions, Specialty Pool objects. The elements of what the jury may consider are already included in the Model Instruction. Inclusion here is duplicative.

P23. The amount you assess as punitive damages need not bear any relationship to the amount you choose to award as compensatory damages and it is not necessary that you award compensatory damages to Smith in order to assess punitive damages against Specialty Pool, so long as you find in favor of Smith and against Specialty Pool on the question of liability.

**Authority:** *Hennessy v. Penril DataComm Networks,* 69 F.3d 1344, 1351-52 (7th Cir. 1995); *Edwards v. Jewish Hospital,* 855 F.2d 1345, 1352 (8th Cir. 1988); *Hicks v. Brown Group Inc.,* 902

F.2d 630, 653 (8th Cir. 1990); *Goodwin v. Circuit Court,* 729 F.2d 541, 542-43 (8th Cir. 1984) *cert denied*, 469 U.S. 828, 105 S. Ct. 112 (1984); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 270.

Approved _____   Denied_____   Approved as modified _____

**Defendant's objection:** In response to Smith's Proposed Instructions **P21 – P25** regarding punitive damages, Specialty Pool proposes that the Court use exclusively the stipulated-to joint Punitive Damages Instruction, taken from the Third Circuit Model Jury Instructions (Civil) § 5.4.2 (2008). To the extent that P23 deviates from the model instructions, Specialty Pool objects. The fact that the jury may still award punitive damages even if it finds only nominal compensatory damages is already included in the Model Instruction. Including here is unduly duplicative.

P24.   You may award punitive damages if you find either that Defendant's management actually derived satisfaction from hurting Mr. Smith <u>or</u> if Defendant's management, while not having any particular desire to hurt Mr. Smith, trampled on his rights in a fashion that fairly can be called reckless.

**Authority:** *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625(1983); *Keenan v. City of Philadelphia,* 983 F.2d 459, 471 (3d Cir. 1992); *Soderbeck v. Burnett County,* 752 F.2d 285,289 (7th Cir. 1985) *cert denied,* 471 U.S. 1117 (1985); *Kolstad v. American Dental Association,* 119 S.Ct. 2118, 2126(1999).

Approved _____   Denied_____   Approved as modified _____

**Defendant's objection:** In response to Smith's Proposed Instructions **P21 – P25** regarding punitive damages, Specialty Pool proposes that the Court use exclusively the stipulated-to joint Punitive Damages Instruction, taken from the Third Circuit Model Jury Instructions (Civil) § 5.4.2 (2008). To the extent that P24 deviates from the model instructions, Specialty Pool objects. This instruction is neither neutral nor relative to the elements of plaintiff's case. The Model Instruction sufficiently informs the jury of what kind of actions support an award of punitive damages. Including these additional elements is unnecessary and argumentative.

P25.   There is no requirement that Mr. Smith show a pattern of wrongdoing for punitive damages to be awarded; a single act, which is either malicious or recklessly indifferent to Plaintiff's federally protected rights will suffice.
**Authority:**  *Kolstad v. American Dental Association,* 119 S.Ct. 2118, 2125-26(1999); *Rowlett v. Anheuser-Busch*, 832 F.2d 194,206 (1st Cir. 1987).

Approved _____   Denied_____   Approved as modified _____

**Defendant's objection:**  In response to Smith's Proposed Instructions **P21 – P25** regarding punitive damages, Specialty Pool proposes that the Court use exclusively the stipulated-to joint Punitive Damages Instruction, taken from the Third Circuit Model Jury Instructions (Civil) § 5.4.2 (2008).  To the extent that P25 deviates from the model instructions, Specialty Pool objects.  Including language here regarding the number of acts required to award punitive damages is unnecessary and argumentative.

**General Objection**.  Specialty Pool objects to any and all bolded language included in Plaintiff's instructions.  Because these instructions will be presented to the jury, bolded language unduly emphasizes points favorable to Plaintiff.

Respectfully submitted:

/S/ Samuel J. Cordes
Samuel J. Cordes
Christine T. Elzer

Pa.I.D. No. 54874 (Cordes)
Pa.I.D. No. 208157 (Elzer)

Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500

Attorneys for Plaintiff